## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.: 0:19-CV-62756-AHS

WILLIAM WARNER,
individually and on behalf of all others
similarly situated,

      Plaintiff,

v.

CONSTANT CONTACT, INC.,

      Defendant.

CLASS ACTION

---

## DEFENDANT CONSTANT CONTACT, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND ACCOMPANYING MEMORANDUM OF LAW

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)[1], Defendant Constant Contact, Inc. ("Constant Contact"), hereby moves the Court for an order dismissing the Amended Complaint filed by Plaintiff William Warner or, in the alternative, the class allegations therein, for the reasons set forth in the accompanying memorandum.

## I.   INTRODUCTION

Plaintiff William Warner ("Warner") filed this putative Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA") class action following his alleged receipt of two unsolicited text messages from Constant Contact.  In response, Constant Contact

---

[1] Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), will hereinafter be referred to as Rule 12(b)(1) and Rule 12(b)(6), respectively.

filed a motion to dismiss that raised, *inter alia*, a significant threshold concern: the Complaint's bald, conclusory allegation of concrete harm failed to establish the existence of Article III standing under the Eleventh Circuit's recent decision in *Salcedo v. Hanna*, 936 F.3d 1162, 1172 (11th Cir., 2019), which found the mere receipt of purportedly unlawful text messages insufficient to confer standing in federal court.  Despite being compelled by *Salcedo* to provide this Court with *factual allegations* of the harm caused by Constant Contact's alleged conduct, Plaintiff made no effort to do so in the Amended Complaint.  On this basis alone, the Amended Complaint should be dismissed outright.

Plaintiff's failure to cure the defects identified in Constant Contact's original motion to dismiss is not limited to the issue of standing.  Despite being on notice that his original claim for violation of 47 U.S.C. § 227(b) (Count I) failed for lack of any factual allegations demonstrating that the text messages at issue were sent using an "automatic telephone dialing system," or ATDS—as that term is defined and interpreted under the TCPA, relevant FCC guidance, and established Eleventh Circuit authority—Plaintiff chose not to add a single new allegation to support his claim when filing the Amended Complaint.  Similarly, Plaintiff failed to include any new allegations to support his claim that the text messages at issue constituted "telephone solicitations" as required to allege a violation of 47 U.S.C. § 227(c) (Count II)—yet another defect identified in Constant Contact's original motion to dismiss.  Indeed, despite ample opportunity to re-plead his case, Plaintiff's Amended Complaint is a near verbatim recitation of his original pleading, the only exceptions being the addition of (a) a screenshot of the second text message

purportedly received by Plaintiff, and (b) a website reference for an article discussing "text message spam."

Plaintiff's failure to include any new substantive allegations in the Amended Complaint is also problematic for his purported class claims.  Even assuming, *arguendo*, that Plaintiff (a) has standing to bring this suit and (b) properly pled the individual claims at issue, Plaintiff's purported class claims are subject to dismissal.  Plaintiff simply cannot maintain a purported class action based solely on unwarranted speculation that individuals other than Plaintiff received the same purportedly unlawful text messages from Constant Contact.  The lack of any *factual* allegations to support the class claims asserted in the Amended Complaint is a tacit admission that Plaintiff has no such facts.  In the event Plaintiff's case is permitted to proceed, it should do so as an individual action.

## II.   FACTUAL BACKGROUND

In November 2019, Plaintiff filed a putative class action complaint alleging that he received an unsolicited marketing text message from Constant Contact in violation of the TCPA.  (Compl. ¶¶ 1, 3, 18.)  After failed efforts to meet and confer, Constant Contact filed a Motion to Dismiss the initial complaint [Dkt. 12]; in response, Plaintiff filed its First Amended Complaint [Dkt. 15].

The Amended Complaint is identical to the initial complaint, with two exceptions: the addition of a footnote linking to a website about "text message spam" (Am. Compl. ¶ 36) and the addition of a second screenshot of a text message allegedly sent to Plaintiff

(*compare* Compl. ¶ 18 with Am. Compl. ¶ 18).[2]  Even after amendment, the only factual allegation related to Plaintiff's alleged receipt of the text messages is that they caused "the depletion of Plaintiff's cellular telephone battery," and "took up memory space [of] approximately 190 bytes."  (Am. Compl. at ¶¶ 35, 36.)  No monetary losses or tangible injuries are alleged.  Plaintiff nevertheless continues to demand up to $1,500 in statutory damages for himself, along with the same damages for each member of two expansive proposed classes.  (*Id.* at ¶¶ 53, 62.)

## III.   PLAINTIFF'S AMENDED COMPLAINT IS SUBJECT TO DISMISSAL UNDER RULE 12(B)(1) DUE TO A LACK OF STANDING

### A.   <u>Legal Standard</u>

Article III of the United States Constitution defines the role of the federal judiciary as resolving "Cases" and "Controversies."  Art. III, § 2; *see Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016).  Standing to sue is a "core component" of the Article III case or controversy requirement.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992).  The doctrine

---

[2] The factual allegations contained in the Amended Complaint suggest—at most—that Plaintiff received two text messages from Constant Contact.  (Am. Compl. ¶ 18).  Although Plaintiff alleges that he received more text messages from Constant Contact, the screenshots that he incorporates into the Amended Complaint only depict two text messages.  Moreover, Plaintiff included a single screenshot in his initial complaint (Compl. ¶ 18) and added a second screenshot upon amendment (Am. Compl. ¶ 18), suggesting that the text messages in the Amended Complaint are the only ones at issue in this case.  Further, Plaintiff does not plead any facts (date, time, content, etc.) which support his conclusory assertion that Constant Contact sent him more than two texts messages.

of standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo*, 136 S. Ct. at 1547.

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). A party invoking federal jurisdiction bears the burden of establishing standing before a federal court may exercise jurisdiction over his claims. *Spokeo*, 136 S. Ct. at 1547. To establish standing, a plaintiff must demonstrate that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. As to the first element, a plaintiff must establish an injury in fact that is "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. (quoting *Lujan*, 504 U.S. at 560). "[T]he requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute." *Salcedo*, 936 F.3d at 1167 (quoting *Summers v. Earth Island Inst*., 555 U.S. 488, 497 (2009)).

## B. Plaintiff Lacks Standing to Pursue This Action

In August 2019, the Eleventh Circuit's *Salcedo* decision held that the "isolated, momentary, and ephemeral" harm allegedly caused by the receipt of an unsolicited text message does not constitute a concrete injury sufficient to confer Article III standing. *Id*. at 1171. In doing so, the Eleventh Circuit emphasized that "allegations of a brief, inconsequential annoyance ***are categorically distinct*** from those kinds of real but intangible harms" that satisfy Article III's injury in fact requirement:

> The chirp, buzz, or blink of a cellphone receiving a single text message is
> more akin to walking down a busy sidewalk and having a flyer briefly waived

in one's face.    Annoying, perhaps, ***but not a basis for invoking the***
***jurisdiction of the federal courts***.

*Id*. at 1172 (emphasis added). In assessing whether standing exists in a given action,
*Salcedo* requires courts to consider "the qualitative nature of the injury" and to assess "how
concrete and real the alleged harm is."  *Id*. (quoting *Spokeo*, 136, S. Ct. at 1548).  Such an
assessment in this action compels dismissal of Plaintiff's Amended Complaint.

In *Salcedo*, a former client of a law firm received a text message from the firm
offering a discount on services.  The former client, Mr. Salcedo, filed a putative class action
on behalf of other recipients of the same text message claiming that, in sending the
message, the firm violated the TCPA.  *Salcedo*, 936 F.3d at 1164.  He alleged that the text
message caused nuisance, waste of time, and invasion of privacy.  *Id*. at 1167.  The
Eleventh Circuit held that Mr. Salcedo did not have Article III standing, finding that
standing "requires a concrete injury even in the context of a statutory violation." *Id*. (citing
*Spokeo*, 136 S. Ct. at 1549).  Following the Supreme Court's guidance in *Spokeo*, the
Eleventh Circuit reviewed the allegations "in light of the statute, our precedent, history,
and the judgment of Congress" and found that there was no support for treating Salcedo's
alleged injury as a concrete injury in fact that confers Article III standing under the TCPA.
*Id*. at 1173.

Here, Plaintiff does not allege *any* facts to suggest that he suffered even a fleeting
annoyance as a result of receiving the alleged text message at issue, let alone any actual
harm to support the existence of a concrete injury.  *See generally*, Am. Compl.  To that
end, Plaintiff's single conclusory allegation of causation and injury, left unchanged in the

Amended Complaint, presents far less of a bar to dismissal than the allegations that were found wanting in *Salcedo*.  *Compare* Am. Compl. ¶ 4 with *Salcedo*, 936 F.3d at 1167. Regardless, *Salcedo* offers a useful road map for dismissal of Plaintiff's Amended Complaint, distinguishing prior Eleventh Circuit decisions that consider standing in TCPA cases and explaining why the TCPA was not intended to address the sort of trivial, conclusory harms alleged here.

First, the Eleventh Circuit's analysis explains that its previous rulings in TCPA cases involving unsolicited calls or faxes are not applicable here.  For example, *Salcedo* distinguishes *Palm Beach Golf Center–Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1252 (11th Cir. 2015), where it held that receipt of an unsolicited fax is sufficient to confer Article III standing.  As *Salcedo* explains, an unsolicited fax monopolizes the use of a fax machine for a measurable period of time and requires the recipient to incur the costs of paper and printing—no similar costs or monopolization of Plaintiff's cellular phone are alleged here—injuries qualitatively different from receipt of a text message.  The *Salcedo* court found that the comparative harms from receipt of a fax and receipt of a text message are too distinct to be analogous.  *Salcedo*, 936 F.3d at 1168.

Second, the Eleventh Circuit reviewed the legislative record to identify the concerns that Congress intended the TCPA to address.  *Id.* at 1169.  The court concluded that, when Congress enacted the TCPA, it was concerned about robocalls causing nuisance and invasion of privacy "within the sanctity of the home," especially with respect to residential lines because, "by nature of their portability and their ability to be silenced, cell phone calls may involve less of an intrusion than calls to a home phone."  *Id.* at 1170.  Here, Plaintiff

does not even bother to allege the circumstances surrounding his receipt of the text messages at issue, nor does he allege that his receipt of these text messages somehow intruded upon or impacted his life in any measurable way.  Regardless, any such allegations would be insufficient to overcome *Salcedo*, as the decision makes clear that the fleeting interruption that may be caused by text messages, at least in small quantities, is not the same type of qualitative harm as a call made to a home residential line.  *Id*. at 1172 ("Our assessment today is thus qualitative, not quantitative.").

Third, the *Salcedo* court looked to the historical harms in tort that are closely related to nuisance and invasion of privacy and, in so doing, held that the "brief, inconsequential annoyance" of receiving a text message cannot establish a predicate for the remaining harms alleged by Plaintiff in this case: intrusion on seclusion, trespass, and conversion.[3] *Id*. at 1172.  Intrusion upon seclusion, the *Salcedo* court found, was an even more "intense" version of invasion of privacy, one that creates liability for invasions of privacy that are "highly offensive to a reasonable person" or intrude upon "private affairs" in a degree akin to eavesdropping or wiretapping.  *Id*. at 1170.  The "isolated" and "momentary" receipt of a text message, the court found, fell far short of an intrusion upon seclusion.  *Id*.  Likewise, the Court held that liability for the torts of trespass and conversion require a greater degree of interference than the receipt of a text message.  *Id*. at 1171-72.  Trespass requires the

---

[3] To the extent Plaintiff additionally baldly alleges "aggravation" and "annoyance" (Am. Compl. ¶ 4), the former is not a harm traditionally recognized by law, and the latter is analyzed the same as a claim for nuisance.  *See, e.g., Fla. E. Coast Properties, Inc. v. Metro. Dade Cty*., 572 F.2d 1108, 1112 (5th Cir. 1978) ("Florida law defines a nuisance as anything which annoys or disturbs one in the free use, possession or enjoyment of his property, or which renders its ordinary use of occupation physically uncomfortable.").

intentional use of property of another for a substantial time or in a way that causes harm to its value.  *Id*. at 1172.  Conversion is an even more invasive interference of a person's control of his or her property.  *Id*.  Receipt of a text message, by contrast, "is precisely the kind of fleeting infraction upon personal property that tort law has resisted addressing." *Id*.

The alleged harm in *Salcedo* differed from historical harms "so significantly in degree as to undermine [plaintiff's] position."  *Id*.  The harm alleged from a second text message does not overcome this vast deficiency.  In fact, the *Salcedo* court repeatedly addressed, and expressly rejected, the Ninth Circuit's holding in *Van Patten v. Vertical Fitness Group, LLC* that receipt of two unsolicited text messages constituted an injury in fact.  *Salcedo*, 936 F.3d at 1172 (citing *Van Patten v. Vertical Fitness Group, LLC* 847 F.3d 1037, 1043 (9th Cir. 2017)).  In declining to follow *Van Patten*, the Eleventh Circuit tellingly preferred to "embrace more fully the Supreme Court's instruction to look for a 'close relationship' to a traditionally redressable harm."  *Salcedo*, 936 F.3d at 1172 (quoting *Spokeo*, 136 S. Ct. at 1549).  Stated simply, the *Salcedo* analysis makes clear that Plaintiff cannot bring a TCPA claim based solely on the fact that he allegedly received two text messages.

Having reviewed its precedent, history, and the judgment of Congress, the *Salcedo* court concluded that the harm experienced by receipt of an unwanted text message is not the kind of harm that confers Article III standing.  Plaintiff has not alleged that he suffered harm qualitatively different from the harm alleged in *Salcedo*, and his attempts to distinguish *Salcedo* by noting that the text messages may have "depleted" his cellular

telephone battery and used up "memory space" (Am. Compl. at ¶¶ 35-36) are not the types of qualitative and concrete injuries articulated in *Salcedo*.[4]  Thus, Plaintiff has failed to allege a concrete injury in fact and lacks standing to maintain this action.

## IV.   PLAINTIFF'S AMENDED COMPLAINT IS SUBJECT TO DISMISSAL UNDER RULE 12(B)(6) DUE TO A FAILURE TO PLAUSIBLY ALLEGE FACTS SUFFICIENT TO STATE A CAUSE OF ACTION

### A.   <u>Legal Standard</u>

Pursuant to Federal Rule of Civil Procedure 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  However, the complaint must also "state[] a plausible claim for relief" in order to survive dismissal under Rule 12(b)(6).  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009). To satisfy the plausibility requirement, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft*, 556 U.S. at 678.

The purpose of a motion under Rule 12(b)(6) is to test the legal sufficiency of a complaint and to avoid unnecessary discovery expenses when a plaintiff does not provide sufficient facts to support a cognizable claim under the law.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557-558 (2007).  As such, in considering a motion under Rule 12(b)(6), a court must presume the factual allegations in a plaintiff's complaint to be true;

---

[4] Additionally, it should go without saying that Plaintiff's footnote regarding the FTC's "finding" that text message solicitations were "*real*" harm based on a website link regarding "text message spam" is not binding legal precedent.  Am. Compl. at ¶ 36.

however, "legal conclusion[s] couched as . . . factual allegation[s]" are not afforded the same deference.  Fed. R. Civ. Proc. 12(b)(6).  A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555. The U.S. Supreme Court specifically recognized the importance of this scrutiny in cases involving class allegations.  *Id*. at 558 ("[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, the basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court.") (internal quotation omitted).

**B.**      **Plaintiff Fails to Support His Claim for Violation of 47 U.S.C. § 227(b) (Count I) With Plausible Allegations Regarding the Use of an Automatic Telephone Dialing System**

In order to establish a claim under the TCPA, a plaintiff must allege facts demonstrating "(1) a call was made to a cell or wireless phone, (2) by the use of any automatic dialing system or an artificial or prerecorded voice, and (3) without prior express consent of the called party."  *Adams v. Ocwen Loan Servicing, LLC*, 366 F. Supp. 3d 1350, 1353-1354 (S.D. Fla. 2018) (quoting *Witchard v. Allied Interstate, LLC*, 2015 WL 6817163, *2 (M.D. Fla. 2015)); *see also Solis v. CitiMortgage, Inc*., 700 F. App'x 965, 970 (11th Cir. 2017); *McGinity v. Tracfone Wireless, Inc.*, 5 F. Supp. 3d 1337, 1340 (M.D. Fla. 2014).  Here, Plaintiff alleges that Constant Contact used an "automatic telephone dialing system, *i.e.*, an ATDS" to send the text messages at issue.  Am. Compl., ¶¶ 24 and 25.

Because Section 227(a)(1) of the TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or

sequential number generator; and (B) to dial such numbers," *Glasser v. Hilton Grand Vacations Co., LLC*, No. 18-14499, 2020 WL 415811, at *2 (11th Cir. Jan. 27, 2020), Plaintiff was required to allege facts supporting his assertion.  Instead, Plaintiff's claim is based on nothing more than a bald recitation of the statutory definition of an ATDS, and the same conclusory assertions—unsupported by fact—contained in a number of boilerplate complaints filed by Plaintiff's counsel.  (Am. Compl. ¶ 24-33).  As made clear by a court in this District when dealing with one such complaint, however, the effort fails: a "'bare allegation that a defendant used an automatic dialing system is not enough.'" *Turizo v. Jiffy Lube Int'l, Inc*., No. 19-CV-61140, 2019 WL 4737696, at *2 (S.D. Fla. Sept. 27, 2019) (*quoting McGinity*, 5 F. Supp. 3d at 1340); *Baranski v. NCO Financial Systems, Inc*., 2014 WL 1155304, *6 (E.D. N.Y. 2014) ("Such an allegation is 'a bare legal conclusion entitled to no weight.'").

"To satisfy this element, courts permit the allegation of an automatic system to be pled on information and belief, but require additional factual information, such as the absence of a relationship between the parties and the random nature of the automation device." *Norman v. Sito Mobile Corp*., 2017 WL 1330199, *3 (D. N.J. 2017).  *See also Tuck v. Portfolio Recovery Assocs., L.L.C.,* No. 19-CV-1270-CAB-AHG, 2019 WL 5212392, at *3 (S.D. Cal. Oct. 16, 2019) ("Plaintiff's complaint simply parrots the statutory definition of an ATDS and other provisions of the TCPA, but the Defendants would have no way of determining if they have any information in their possession with respect to such calls with Plaintiff's conclusory and sweeping allegations."); *Mesa v. American Express Educational Assurance Co*., 2017 WL 2212147, *5 (S.D. Fla. 2017) ("'[W]ell-pled

allegations of an automated telephone dialing system rely on indirect allegations, such as the content of the message, the context in which it was received, and the existence of similar messages to raise an inference that an automated telephone dialing system was used'") (*quoting Gragg v. Orange Cab Co*., 942 F. Supp. 2d 111, 114 (W.D. Wash. 2013)); *Baranski*, 2014 WL 1155304 at *6 ("Plaintiffs need not plead 'specific technical details' regarding [Defendant's] use of an ATDS, but they must at least describe, in layman's terms, the facts about the calls or the circumstances surrounding the calls to make it plausible that they were made using an ATDS"); *Johansen v. Vivant, Inc.*, 2012 WL 6590551, *3 (N.D. Ill. 2012) ("It is not unreasonable . . . to require a plaintiff to describe the phone messages he received in layman's terms or provide the circumstances surrounding them to establish his belief that the messages were prerecorded or delivered via an ATDS").

In the instant action, Plaintiff has not pled any *facts* to support his conclusory claim that the text messages at issue were transmitted by an ATDS.  Nor does Plaintiff's recitation of a series of buzzwords found in the statutory language of the TCPA and other FCC guidance as it relates to the definition of an ATDS save his claim from dismissal.  While the Amended Complaint vaguely asserts that Constant Contact sent text messages to Plaintiff via such a system (Am. Compl. ¶ 24-33), Plaintiff does not (a) point to any purported hallmarks of an ATDS in the text messages at issue that is a characteristic of an ATDS, (b) describe the circumstances surrounding the text messages, or (c) allege the absence of a prior relationship between the parties (e.g., that Plaintiff was not a registered attendee of the Miami Small Business Expo referenced in the text messages or a customer of Constant Contact).  If anything, as in *Turizo*, the text of the messages raises an inference

that it was sent as a result of some affirmative conduct or registration process on the part of Plaintiff, as opposed to marketing messages sent *en masse*.  *Turizo*, 2019 WL 4737696, at *3.

Simply put, even though Plaintiff was on notice about the deficiencies in his initial pleading, there is absolutely nothing in the Amended Complaint that creates an inference supporting the bald assertion that Constant Contact sent text messages to Plaintiff using an ATDS.  Absent such basic factual information, the Amended Complaint fails to state a facially plausible TCPA claim and should be dismissed.  *See, e.g., McGinity*, 5 F. Supp. 3d at 1340 ("Use of an automatic telephone dialing system is a necessary element of a claim under the TCPA, so dismissal is required in the absence of a plausible inference that Defendant used such a device"); *Tuck,* 2019 WL 5212392 at *3; *Mesa*, 2017 WL 2212147 at *5; *Norman*, 2017 WL 1330199 at *3; *Baranski*, 2014 WL 1155304 at *6; *Johansen*, 2012 WL 6590551 at *3; *Hunter v. Diversified Consultants*, *Inc*., 2014 WL 6747153, *1 (M.D. Fla. 2014).

## C.    Plaintiff's Claim for Violation of 47 U.S.C. § 227(c) (Counts II) Fails for Lack of a Telephone Solicitation

Section 227(c)(5) of the TCPA, in conjunction with its implementing regulations, restricts "telephone solicitation[s]" to residential telephone subscribers who register their telephone number on the National Do Not Call Registry.  *See* 47 U.S.C. § 227(c)(5); C.F.R. § 64.1200(c) (stating that no person or entity shall initiate any telephone solicitation to "(2) a residential telephone subscriber who has registered his or her telephone number on the

national do-not call registry ….").  Plaintiff asserts that Constant Contact failed to comply with these regulations, namely § 64.1200(c), by

> initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

(Am. Compl. ¶ 59.)

As relevant here, 47 C.F.R. § 64.1200(f)(14) defines "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services."  Notwithstanding Plaintiff's conclusory classification of the text messages at issue as "solicitations," the plain text of the messages makes clear that they are nothing more than an invitation to attend an event for which Plaintiff presumably registered—they do not encourage Plaintiff to purchase, rent, or invest in anything.  As such, they do not constitute "telephone solicitations" under the TCPA. *Murphy v. DCI Biologicals Orlando, LLC*, No. 6:12-cv-1459-Orl-36KRS, 2013 WL 6865772, at *10 (M.D. Fla. Dec. 31, 2013) (text message that offered to pay plaintiff to make another blood donation was not attempt to sell something and thus was not a "telephone solicitation" under TCPA); *Friedman v. Torchmark Corp.*, No. 12-cv-2837, 2013 WL 1629084, at *4 (S.D. Cal. Apr. 13, 2013) (court dismissed complaint alleging violations of 47 U.S.C. §2247(c) when the alleged messages consisted of an invitation to

"attend a recruiting webinar wherein Plaintiff could learn about Defendant's products to potentially sell them" because the message was not an effort to sell something to the plaintiff, but rather an opportunity for the plaintiff to earn money) (cited by *Murphy*, 2013 WL 6865772, at *10); *Meadows v. Franklin Collection Serv. Inc*., 414 Fed. App'x 230, 236 (11th Cir. 2011) (noting that TCPA defendant "did not try to sell anything to [the plaintiff], and did not offer to provide her any services" and rejecting the plaintiff's "invitation to stretch and distort the meaning of 'telephone solicitation'").

To the extent Plaintiff may claim that by reminding him of his upcoming attendance at the Miami Small Business Expo, Constant Contact intended to lure Plaintiff into eventually becoming a customer, the attenuated possibility of such a result is insufficient to classify the text messages at issue as telephone solicitations under the TCPA. *Edelsberg v. Vroom, Inc.*, No. 16-cv-62734, 2018 WL 1509135, at *5 (S.D. Fla. Mar. 27, 2018) (text indicating that defendant intended to purchase advertised vehicle and directing plaintiff to defendant's website for additional information was not a "telephone solicitation" because while "it is apparent that visiting [defendant's] website 'could result in the increase in the chances' of plaintiff purchasing a used car sold by [defendant], [plaintiff] 'cites no authority that this degree of connection between communication and purchase is sufficient to transform a text of the sort he received into a telemarketing message.'") (internal citation omitted).

As a result, Plaintiff's claim under § 227(c) of the TCPA should be dismissed.

**D.** **Plaintiff Fails to Allege Facts to Support His Purported Class Claims**

The pleading standards recited *supra* also apply to the sufficiency of class action allegations. *See Daisy, Inc. v. Pollo Operations, Inc*., No. 2:14-cv-564-FtM-38CM, 2015 WL 1418607, at *5 (M.D. Fla. Mar. 27, 2015).   In his Amended Complaint, Plaintiff alleges, in relevant part:

> Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more . . . [u]pon information and belief, Defendant has placed automated texts to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express written consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable . . .the exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

(Am. Compl. ¶¶ 40-42.)  Similarly, in *Daisy*, the Plaintiff alleged:

> Plaintiff is informed and believes, and upon such information and belief avers, that the number of persons and entities of the Plaintiff Class is numerous and joinder of all members is impracticable. Plaintiff is informed and believes, and upon such information and belief avers, that the number of class members is at least forty.

2015 WL 1418607, at *5.

In *Daisy*, the plaintiff additionally alleged that the number of facsimiles, the time and date they were sent, and the names of the recipients were held within the defendant's possession and could be ascertained via discovery. *Id*. at *6. Based on those allegations, the *Daisy* court held, "[p]laintiff does not provide the [c]ourt with any factual basis other than speculation based upon the [p]laintiff's information and belief that some forty other businesses also received the alleged facsimiles in violation of the TCPA . . . as noted above unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of the allegations." *Id*. As such, the *Daisy* court held that the plaintiff had not sufficiently pled a factual basis to support a plausible Rule 23 class action. *Id*.

In the same way, Plaintiff failed to provide this Court with any factual allegations supporting a Rule 23 class action, and instead relied on the same allegations as the plaintiff in *Daisy*, almost verbatim—even after taking the opportunity to file an Amended Complaint. Thus, in conformity with *Daisy*, this Court should dismiss the class action claim for failure to state a claim upon which relief can be granted. *See also SCOMA Chiropractic, P.A. v. Jackson Hewitt Inc.*, No. 2:17-cv-24-FtM-38CM, 2017 WL 3149360, at *4 (M.D. Fla. July 25, 2017) (dismissing class action because allegations, which relied on plaintiff's "information and belief," but completely lacked any factual support, were insufficient to allege a class action under TCPA).

## V.        CONCLUSION

Based on the foregoing, Constant Contact respectfully requests the Court grant its Motion to Dismiss pursuant to Rule 12(b)(1) or 12(b)(6), and dismiss this action with prejudice.

## VI.        LOCAL RULE 7.1(A)(3) CERTIFICATE OF COUNSEL

Pursuant to Rule 7.1(a)(3) of the Local Rules, undersigned counsel hereby certifies that counsel for Constant Contact has conferred with counsel for Plaintiff via e-mail in a good faith effort to resolve the issues raised in this Motion.  Plaintiff opposes the relief requested herein.

## VII.        REQUEST FOR ORAL ARGUMENT

Pursuant to Southern District Local Rule 7.1(b)(2), Constant Contact requests oral argument on this Motion to Dismiss and estimates the oral argument shall take approximately thirty minutes.

Respectfully submitted,

By:*/s/ Matthew B Criscuolo*
MATTHEW B. CRISCUOLO
Florida Bar No. 58441
mcriscuolo@cozen.com
PAULA L. ZECCHINI
(*pro hac to be submitted*)
pzecchini@cozen.com
**COZEN O'CONNOR**
One North Clematis, Suite 510
West Palm Beach, FL 33401
Tel:  (561) 515-5263
Fax:  (561) 515-5230

*Attorneys for Defendant Constant Contact, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 7th day of February, 2020, I electronically filed

the foregoing using the CM/ECF system which will send the notifications to all parties

below:

Jibrael S. Hindi
Florida Bar No. 118259
Thomas J. Patti
Florida Bar No. 118377
**THE LAW OFFICE OF JIBRAEL S. HINDI**
110 SE 6th Street, Suite 1744
Fort Lauderdale, FL 33301
Tel:  (954) 907-1136
jibrael@jibraellaw.com
tom@jibraellaw.com

*Attorneys for Plaintiff*

/s/ *Matthew B. Criscuolo*
MATTHEW B. CRISCUOLO